MATTHEW A. LESNICK (SBN 177594)
   matt@lesnickprince.com
CHRISTOPHER E. PRINCE (SBN 183553)
   cprince@lesnickprince.com
LISA R. PATEL (SBN 341574)
   lpatel@lesnickprince.com
LESNICK PRINCE & PAPPAS LLP
315 W. Ninth St., Suite 705
Los Angeles, CA  90015
Telephone:   (213) 493-6496
Facsimile:   (213) 493-6596

Counsel for Plaintiff
Lesnick Prince & Pappas LLP

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:16-bk-24333-BR |
| ALEXANDER DAVID SHOHET & BERNADINE FRANCIS FRIED, | Chapter 11 |
| Debtors. | Adv. No: _____ |
| LESNICK PRINCE & PAPPAS LLP | **COMPLAINT FOR: (1) QUIET TITLE; (2) CANCELLATION OF INSTRUMENTS; (3) DECLARATORY RELIEF; (4) DETERMINATION OF VALIDITY OF LIEN; (5) SLANDER OF TITLE; (6) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS; (7) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS; (8) CONTEMPT OF COURT; (9) SUBSTANTIAL CONTRIBUTION** |
| Plaintiff, | |
| v. | |
| HOWARD C. SAMUELS, an individual, and ALEXANDER DAVID SHOHET & BERNADINE FRANCIS FRIED, individuals, | |
| Defendants. | |

Plaintiff Lesnick Prince & Pappas LLP alleges as follows:

### <u>JURISDICTION AND VENUE</u>

1.      Pursuant to 28 U.S.C. §§ 1334 and 157 and the General Order of the United States District Court of the Central District of California referring all matters relating to bankruptcy to the bankruptcy judges, this Court has jurisdiction over the above-captioned adversary proceeding, which arises in and relates to the above-captioned case under

Title 11 and arises under Title 11.  This adversary proceeding is a "core" proceeding, which this Court may hear and determine, within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (K), (L), and (O).

2.    Venue for this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409.

3.    This Court has jurisdiction to adjudicate the issues raised in this adversary proceeding by virtue of 28 U.S.C. § 1334.

## PARTIES

4.    Plaintiff Lesnick Prince & Pappas LLP ("Plaintiff" or "LPP") is a law firm and limited liability partnership organized under the laws of the State of California with a principal place of business in Los Angeles County, California.  LPP is a secured creditor in the above-captioned bankruptcy case.

5.    Defendant Howard C. Samuels ("Samuels") is an individual who, on information and belief, resides in Los Angeles County.

6.    Defendants Alexander David Shohet and Bernadine Francis Fried (together, the "Debtors") are individuals residing in Los Angeles County and the Reorganized Debtors in the above-captioned bankruptcy case.

7.    Samuels, along with his wife, was business partners with the Debtors in a business called Wonderland Treatment Centers LLC ("Wonderland"). Wonderland, which was formed in 2006, ran high-end addiction treatment and detoxification facilities and provided related services in Los Angeles.

## STATEMENT OF RELEVANT FACTS

8.    This is an action to remove an alleged lien that was wrongfully recorded by Samuels against the Debtors' personal residence located at 8530 Appian Way, Los Angeles, California 90046 (the "Appian Property"). A full legal description of the Appian Property is included in the preliminary title report attached as Exhibit A. [*See* Ex. A, p.3 "Legal Description."]

9.      On October 30, 2016, the Debtors filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, commencing the above-captioned bankruptcy case (the "Bankruptcy Case"). [Bk Dkt. No. 1.]

10.     LPP is a creditor of the Debtors in the Bankruptcy Case. In their Official Schedule E/F attached to the bankruptcy petition in the Bankruptcy Case, the Debtor's listed LPP as an unsecured creditor with a claim in the amount of $300,087.90. LPP's claim was not listed as contingent, unliquidated or disputed. Accordingly, LPP had an allowed claim in the Bankruptcy Case in the amount of $300,087.90. LPP's claim arises from prepetition legal work LPP performed for the Debtors in litigation related to earlier bankruptcy cases filed by the Debtors and by Samuels.

11.     On June 27, 2018, the Court entered its "Order Confirming Individual Debtors' *Modified* Second Amended Chapter 11 Plan of Reorganization" (the "Confirmation Order"). [Bk Dkt. No. 106.] The Confirmation Order confirmed the Debtors' chapter 11 plan of reorganization (the "Plan") [Dkt. No. 93] and provides, among other things:

2.     A Modification of treatment of Class 7 Creditor Lesnick Prince & Pappas LLP ("LLP") has been filed on June 19, 2018 (docket no. 104) to reflect the following modified plan treatment:

a.  LLP holds a sixth priority $100K consensual lien on Debtors' primary residence ("Settlement Lien");

b.  Settlement Lien begins to accrue interest at 5% per year after 3 years;

c.  Settlement Lien will be lower priority than other secured claims listed in Plan;

d.  No payments required;

e.  Debtors may make payments at any time and in any amount in order to lower the principal (and interest if applicable) on the Settlement Lien; and

f.  Settlement Lien contingent on plan confirmation (Settlement Lien does not go into effect until and unless Debtors' plan is confirmed).

12.     The above-described modifications to the Plan and granting of a sixth-priority lien against the Appian Property in favor of LPP resulted from negotiations to settle LPP's potential objections to the Debtors' proposed plan. In accepting the above-described settlement, LPP reasonably relied on the Debtor's representations in its court filings about the existing liens against the Appian Property (described below).

13.     As a result of the above-described Plan modification, agreed to by the parties and approved by the Court, LPP received a secured claim against the Appian Property in the principal amount of $100,000 and waived its remaining unsecured claim. LPP subsequently recorded a copy of the Confirmation Order with the Los Angeles County Recorder's Office to provide further public notice of its lien against the Appian Property.

14.     According to the Debtor's Plan and accompanying Disclosure Statement [Bk Dkt. No. 92], the only other claims secured by the Appian Property were the following:

| Class | Creditor | Priority | Amount |
|---|---|---|---|
| 1 | Bank of America | First | $617,501.14 |
| 2 | National City Bank | Second | $176,044.17 |
| 3 | Wells Fargo Bank, N.A. | Third | $101,080.00 |
| 4 | Ari Miller | Fourth | $50,000.00 |
| 5 | Internal Revenue Service | Fifth | $181,548.99 |
| | | TOTAL | $1,126,174.30 |

15.     Samuels was not listed as a creditor in the Debtors' initial Schedules. On January 30, 2017, the Debtors filed Amended Schedules in which they listed Samuels as holding a general unsecured claim in the amount of $10,158.43. [*See* Bk Dkt. No. 32.] As a result of the Amended Schedules, Samuels was added to the Master Mailing Matrix in the Bankruptcy Case and was served with required notices thereafter. Samuels did not file a proof of claim or any other pleading in the Bankruptcy Case. Accordingly, under the Plan, Samuels had an unsecured claim in the amount of $10,158.43 and no secured claim.

16.        The Debtors have not made any payments to LPP on account of LPP's secured claim. As of the date of this Complaint, LPP is owed $112,520.55, with interest continuing to accrue at the rate of $13.70 per day.

17.        In or about June 2022, the Debtors attempted to refinance the Appian Property by obtaining a new loan from N.H. Mortgage. The proposed refinancing was intended to pay off all existing secured claims against the Appian Property listed in the Plan, including LPP's secured claim, and provide the Debtor's with additional cash and/or credit for their use.

18.        In the course of the refinancing process, N.H. Mortgage obtained a preliminary title report or similar document that revealed an alleged lien that had been recorded against the Appian Property by Samuels and that had not been described in the Plan or any other bankruptcy pleading. Specifically, on July 1, 2009, Samuels, through his attorney Tristan Mackprang, recorded a document entitled "Receiver's Certificate of Indebtedness No. 1" with the Los Angeles County Recorder's Office (the "Receiver's Certificate"). A true and correct copy of the Receiver's Certificate is attached as Exhibit B.

19.        The Receiver's Certificate relates to litigation involving Wonderland in the Los Angeles County Superior Court captioned *Shohet, et al. v. Wonderland Treatment Centers LLC, et al.* (*Dr. Howard C. Samuels, et al. Real Parties in Interest*) [Case No. BC401271] (the "Receivership Action"). On or about May 19, 2009, the LA Superior Court appointed David J. Pasternak (the "Receiver") as receiver over Wonderland.

20.        In connection with the Receivership Action, Samuels loaned money to the Receiver. According to the Receiver's Certificate, Samuels loaned the Receiver $125,000, with interest accruing at the rate of 8.00% per annum. The Receiver's Certificate further provides:

> Pursuant to Paragraph j of Attachment 27 to the May 19, 2009
> Order, this Certificate is a lien of first priority on all property in
> the Receivership Estate, which lien shall rank no less than pari
> passu with any other lien granted by the Receiver through the

issuance of Receiver's Certificates, and superior to the interests of any secured creditors given notice of the issuance of this Certificate.

21.    The Receiver's Certificate evidences an obligation of the Receiver to Samuels. It does not evidence any obligation of the Debtors to Samuels.

22.    The Receivership Estate was comprised only of the assets of Wonderland. The Debtors' personal assets, including the Property, was never property of the Receivership Estate. Accordingly, the Receivership Certificate does not constitute the granting of a lien against the Debtors' personal assets, including the Appian Property.

23.    On June 9, 2022, Mr. Mackprang, as counsel for Samuels, sent a payoff demand to Diana Wyatt of Stewart Title of California, the escrow company hired to handle escrow for the planned refinancing of the Appian Property (the "Samuels Payoff Demand"). A true and correct copy of the Samuels Payoff Demand is attached as Exhibit C. The Samuels Payoff Demand states, in part: "The amounts required as of June 9, 2022 to fully satisfy all obligations secured by the Receiver's Certificate are: $254,876.10 ...."

24.    On August 23, 2022, Sanaz Bereliani, as counsel for the Debtors, sent a letter to Mr. Mackprang explaining, among other things, that the Receiver's Certificate was wrongfully recorded against the Appian Property, does not evidence an obligation of the Debtors, and violated the discharge injunction contained in the Debtors' confirmed Plan. A true and correct copy of her letter is attached as Exhibit D.

25.    On August 26, 2022, Mr. Mackprang sent a responding letter to Ms. Bereliani, a true and correct copy of which is attached as Exhibit E. In the letter, Mr. Mackprang asserts that, "The Lien was perfected in 2009 and the underlying obligations has [sic] never been satisfied or extinguished. It remains a valid lien on the Property."

26.    Samuels did not remove his alleged, wrongful lien from the Appian Property or request that the Los Angeles County Recorder's Office remove the Receiver's Certificate from the official records. Accordingly, the Receiver's Certificate is still recorded as a lien against the Appian Property. On information and belief, Samuels continues to

assert that the Receiver's Certificate constitutes a valid lien against the Appian Property and that the lien is higher in priority than LPP's lien against the Appian Property.

27.    As a result of Samuels' refusal to remove the wrongfully-recorded Receiver's Certificate, the Debtors were not able to refinance the Appian Property. Subsequently, interest rates have risen substantially, resulting in additional damages to the Debtors and the reorganized bankruptcy estate.

28.    At various times from August 2022 through the present, LPP has demanded that the Debtors take action to remove the Receiver's Certificate and any alleged lien in favor of Samuels from the Appian Property. The Debtors have failed to take any formal action to try to remove the wrongful lien.

29.    At various times from August 2022 through the present, LPP has offered to represent the Debtors in an action to remove the Receiver's Certificate and any alleged lien in favor of Samuels from the Appian Property. The Debtors declined those offers.

**FIRST CLAIM FOR RELIEF**
**[Quiet Title – CCP § 760.020(a)]**
**(Against All Defendants)**

30.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 29.

31.    California Code of Civil Procedure § 760.020(a) provides, "An action may be brought under this chapter to establish title against adverse claims to real or personal property or any interest therein."

32.    Samuels does not have a secured claim against the Debtors or valid lien against the Appian Property and wrongfully recorded the Receiver's Certificate. Accordingly, title in and to the Appian Property should be quieted to clarify that the Debtors own the Appian Property free and clear of any claim of Samuels.

**SECOND CLAIM FOR RELIEF**
**[Cancellation of Instruments]**
**(Against Samuels)**

33.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 32.

34.     The Receiver's Certificate remains in existence in the Official Records of the Los Angeles County Recorder's Office and in the possession, custody, or control of Samuels. This document, if left outstanding, will continue to create a cloud upon the title to the Appian Property, which title should properly be vested free and clear of the Receiver's Certificate.

35.     The Receiver's Certificate will prevent LPP and the Debtors from exercising their rights including the disposition or use of the Appian Property.

36.     An order and judgment of this Court should issue determining and declaring that the Receiver's Certificate is void and of no force or effect as against the Appian Property and further that this document should be ordered delivered up to the Court and canceled.

37.     Plaintiff has no adequate remedy at law and therefore seeks a judicial decree of this Court compelling Samuels to withdraw the Receiver's Certificate.

**THIRD CLAIM FOR RELIEF**
**[Declaratory Relief]**
**(Against All Defendants)**

38.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 37.

39.     An actual controversy has arisen and now exists between Plaintiff and Defendants concerning whether Samuels has any lien on or interest in the Appian Property.

40.     Plaintiff contends that the Receiver's Certificate does not evidence a valid claim against the Debtors, does not create a lien against the Appian Property, was wrongfully recorded, and that Samuels does not have any valid lien against the Appian Property.

41.     Samuels asserts that he was entitled to record the Receiver's Certificate and that it constitutes a valid lien against the Appian Property and claim against the Debtors.

42.     The Debtors have failed to take any action to remove Samuels' alleged lien from the Appian Property and are permitting the wrongful lien to remain on the Appian Property, to the detriment of LPP and the reorganized bankruptcy estate.

43.     Plaintiff is entitled to a judicial determination to resolve this issue and determine that Samuels has no valid lien on or other interest in the Appian Property and that the Receiver's Certificate is void as a matter of a law to the extent it purports to assert a claim against the Debtors or lien on the Debtors' property.

44.     Such a declaration is necessary and appropriate at this time in order to avoid the irreparable harm which Plaintiff will suffer in absence of such a declaration.

### FOURTH CLAIM FOR RELIEF
**[Determination of Validity, Priority & Extent of Lien]**
**[11 U.S.C. § 506(d) and Fed. R. Bank. P. 7001]**
**(Against All Defendants)**

45.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 44.

46.     As set forth above, Plaintiff disputes that Samuels has a legitimate secured claim against the Debtors or lien against the Appian Property.

47.     An actual controversy exists between Plaintiff and Defendants regarding whether Samuels has a valid lien against the Appian Property, which is property of the reorganized bankruptcy estate. For purposes of administration and execution of its confirmed Plan, Plaintiff and the Debtor need to know the validity, priority and extent of any alleged lien of Samuels against the Appian Property and are entitled to have that issue determined by the Court.

48.     Plaintiff is entitled to a judgment declaring that Samuels' purported lien against the Appian Property is void pursuant to Bankruptcy Code § 506(d).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIFTH CLAIM FOR RELIEF**
**[Slander of Title]**
**(Against Samuels)**

49.　　Plaintiff realleges and incorporates by reference Paragraphs 1 through 48.

50.　　By recording the Receiver's Certificate against the Debtors and the Appian Property and by sending the Samuels Payoff Demand to Stewart Title Company, Samuels cast doubt about the Debtor's ownership and interest in the Appian Property.

51.　　By recording the Receiver's Certificate in the records of the Los Angeles County Recorder, Samuels made a public statement about the Debtors' ownership and interest in the Appian Property that was untrue.

52.　　By sending the Samuels Payoff Demand to Stewart Title Company, Samuels made a statement to someone other than the rightful property owner (the Debtors) regarding the Debtors' ownership and interest in the Appian Property that was untrue.

53.　　Samuels knew or should have recognized someone else might act in reliance on the wrongfully recorded Receiver's Certificate, causing economic loss.

54.　　Samuels knew or should have recognized someone else might act in reliance on the untrue Samuels Payoff Demand, causing economic loss.

55.　　Plaintiff and the Debtors' reorganized bankruptcy estate did in fact suffer immediate and direct financial harm because, as a result of the wrongful recording of the Receiver's Certificate and the transmission of the Samuels Payoff Demand, the Debtors were unable to refinance the Appian Property.

56.　　Plaintiff was directly damaged by Samuels' actions because its secured claim would have been paid in full in 2022 and because it has been forced to incur legal expenses necessary to remove the false cloud on title to the Appian Property.

### SIXTH CLAIM FOR RELIEF
#### [Intentional Interference With Contractual Relations]
#### (Against Samuels)

57.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 56.

58.    The Plan constituted a contract between the Debtors and their creditors, including Plaintiff.

59.    The settlement agreement between the Debtors and Plaintiff resulting in LPP's secured claim and lien on the Appian Property constituted a contract.

60.    Samuels was provided with notice of the Plan and the Confirmation Order, which incorporated the modification and settlement with Plaintiff.  Accordingly, Samuels had actual or constructive knowledge of both contracts.

61.    By the acts described in this Complaint, Samuels intended to disrupt the performance of these contracts or knew that disruption of performance was certain or substantially certain to occur.

62.    As a result of Samuels' actions, Plaintiff was harmed in an amount to be proved at trial, but not less than $112,520.55 plus fees and costs.

63.    Samuels' conduct was a substantial factor in causing Plaintiff's harm.

### SEVENTH CLAIM FOR RELIEF
#### [Intentional Interference With Prospective Economic Relations]
#### (Against Samuels)

64.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 63.

65.    The Debtors and N.H. Mortgage were in an economic relationship that probably would have resulted in an economic benefit to the Debtors. Plaintiff was a third-party beneficiary of that economic relationship.

66.    Samuels had actual knowledge of this economic relationship.

67.     By transmitting the baseless Samuels Payoff Demand, Samuels engaged in wrongful conduct. Samuels either intended to disrupt this economic relationship or knew that disruption of the relationship was certain or substantially certain to occur.

68.     The relationship was, in fact, disrupted because the Debtors were unable to refinance the Appian Property as a result of Samuels' false payoff demand.

69.     Plaintiff was directly harmed as a result of the Debtors' inability to refinance the Appian Property.

70.     Samuels' conduct was a substantial factor in causing Plaintiff's harm.

## EIGHTH CLAIM FOR RELIEF
### [Contempt of Court]
### (Against Samuels)

71.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 70.

72.     Since at least on or about January 30, 2017, Samuels was aware of the pendency of the Bankruptcy Case. Samuels had actual notice of all relevant events in the Bankruptcy Case, including, without limitation, the Plan, the Confirmation Order, and the discharge injunction contained within the Plan.

73.     Samuels' failure to withdraw or remove the Receiver's Certificate from official records of the Los Angeles County Recorder's Office and continuing to assert that he has a lien on the Appian Property constituted a violation of the discharge injunction contained in the Plan and Confirmation Order, in violation of orders of this Court and Bankruptcy Code § 1141(d) and has caused actual monetary damages to the Debtors, the reorganized bankruptcy estate and LPP in an amount to be proved at trial. As a result, Samuels may be held in contempt under Bankruptcy Code § 105(a) and the Court's inherent authority.

### NINTH CLAIM FOR RELIEF
### [Substantial Contribution]
### (Against the Debtors)

74.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 73.

75.    The Debtors have failed to take any action to remove the wrongfully-recorded Receiver's Certificate from being asserted as a lien against the Appian Property, which is property of the reorganized bankruptcy estate.

76.    As a result of the Debtors' failure to take action, LPP has been forced to file and prosecute this action for the benefit of the reorganized bankruptcy estate.

77.    Accordingly, LPP is entitled to an administrative priority claim in an amount to be proved at trial under the Plan under Bankruptcy Code § 503(b)(3) for making a "substantial contribution" to the case.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff LPP respectfully requests that the Court enter judgment as follows:

A.    For a judicial declaration and decree that the Debtors own the Appian Property free and clear of the Receiver's Certificate and any alleged lien or security interest in favor of Samuels;

B.    For a judicial declaration and decree that the Receiver's Certificate is void *ab initio*, null and void, and of no force or effect as against the Appian Property and that Samuels has no right, title, estate, lien or interest in or to the Appian Property;

C.    For an order and judgment that Samuels be compelled to execute whatever documents may be necessary to remove the existing cloud upon the title to the Appian Property;

D.    For an order directing and authorizing the Clerk of the Court, in the event that the defendants fail or refuse for any reason to perform in

accordance with the order and judgment herein, to execute such documents as may be necessary to carry out the terms of the order and judgment herein;

E.  For an order and judgment determining that Samuels does not have any secured claim against the Appian Property;

F.  For judgment against Samuels in favor of Plaintiff in an amount to be proved at trial not less than $112,520.55 plus interest;

G.  For an order holding Samuels in contempt under Bankruptcy Code § 105(a) and the Court's inherent authority for violating the Plan discharge injunction and Confirmation Order and for actual and punitive damages in an amount to be proved at trial;

H.  For costs of suit incurred herein; and

I.  For such further relief as the Court may deem appropriate.

DATED:  December 28, 2023          LESNICK PRINCE & PAPPAS LLP


By:___/s/Matthew A. Lesnick_____
    Matthew A. Lesnick
    Counsel for Plaintiff
    Lesnick Prince & Pappas LLP

14

# EXHIBIT A



Ticor Title - OC
1500 Quail Street, 3rd Floor Newport Beach, CA 92660

# Title Report

1500 Quail Street, 3rd Floor Newport Beach, CA 92660

Title Officer: Johna L. Cannon - OC
Email: TeamCannon@TicorTitle.com
Phone No.: (714) 289-3354
Fax No.: (949) 809-0765
File No.: 00881250-997-JC2

Property Address: 8530 Appian Way, Los Angeles, CA 90046

## Introducing Ticor Title LiveLOOK

LiveLOOK title document delivery system is designed to provide 24/7 real-time access to all information related to a title insurance transaction.

Access title reports, exception documents, an easy-to-use summary page, and more, at your fingertips and your convenience.

To view your new Ticor Title LiveLOOK report, Click Here



**Effortless, Efficient, Compliant, and Accessible**

 **TICOR TITLE**™

1500 Quail Street, 3rd Floor
Newport Beach, CA 92660
Phone: (714) 289-3300

Issuing Policies of Chicago Title Insurance Company

ORDER NO.: **00881250-997-JC2**

Escrow/Customer Phone: **(949) 752-1900**

Blackmore Escrow
19700 Fairchild Road, Suite 110
Irvine, CA 92612
ATTN: Amy Green
Email: agreen@blackmoreescrow.com
Reference No.: 22-11706-AG

Title Officer: **Johna L. Cannon - OC**
Title Officer Phone: **(714) 289-3354**
Title Officer Fax: **(949) 809-0765**
Title Officer Email: **TeamCannon@TicorTitle.com**

PROPERTY: **8530 Appian Way, Los Angeles, CA 90046**

## PRELIMINARY REPORT

*In response to the application for a policy of title insurance referenced herein, **Ticor Title Company of California** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(s) of title insurance to be issued hereunder will be policy(s) of Chicago Title Insurance Company, a Florida Corporation.*

***Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.***

***It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.***

Countersigned:

By: _____
     Authorized Signature

By: _____
Randy Quirk
President

ATTEST _____
Marjorie Nemzura
Corporate Secretary



1500 Quail Street, 3rd Floor
Newport Beach, CA 92660
Phone:  (714) 289-3300

## PRELIMINARY REPORT

**EFFECTIVE DATE:**            December 30, 2021 at 7:30 a.m.

**ORDER NO.:  00881250-997-JC2**

The form of policy or policies of title insurance contemplated by this report is:

    **ALTA Extended Loan Policy (6-17-06)**


1.      THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO
COVERED BY THIS REPORT IS:

    **A Fee**

2.      TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

    **Alexander D. Shohet and Bernadine Fried, husband and wife, as joint tenants, subject to
proceedings pending in the bankruptcy court where a petition for relief was filed.**

    **Name of Debtor:  Alexander David Shohet and Bernadine Francis Fried**
    **Date of Filing:  October 30, 2016**
    **U.S. District Court:  Central District of California (Los Angeles)**
    **Case No:  2:16-BK-24333-BR**


3.      THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

    **See Exhibit A attached hereto and made a part hereof.**

PRELIMINARY REPORT
YOUR REFERENCE:  22-11706-AG

Ticor Title Company of California

# EXHIBIT "A"

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Parcel 1:

Lots 13 and 14, of Tract No. 14671, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 345 Page(s) 4 and 5 of maps, in the office of the County Recorder of said County.

Parcel 2:

Those portions of lots 12 and 17, of Tract No. 14671, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 345 Page(s) 4 and 5 of maps, in the office of the County Recorder of said County.

Beginning at a point in the Northeast line of said Lot 12, distant thereon South 23°25'30" East 34 feet from the most northerly corner of said Lot 12: thence along said Northeast line South 34°25'30" East 91 feet to the most easterly corner of said Lot 12; thence South 45°37'10" West 81 feet; thence North 66°25'50" West 38.09 feet; thence North 26°40'00" West 142 feet to the southerly line of Appian way as shown on map of Said Tract No. 14671; thence easterly along said southerly line of Appian way, which is the arc of a curve concave to the North with a radius of 113 feet; (said radius at its beginning bears South 11°12'50" West). An arc distance of 28.03 feet to a point on the northwesterly line of said Lot 12 where the radius bears South 2°59'50" East; thence southwesterly along the northwesterly line of said Lot 12, which is an arc of curve concave to the Southeast with a radius of 10 feet; (at its beginning is normal to the last mentioned radius bearing). An arc distance of 19.84 feet to an angle point on the Boundary line of said lot; thence South 26°40'00" East, along the southwesterly line of said Lot 12. A distance of 108.48 feet to the most southerly corner of said Lot 12; thence North 72°27'15" East along the southeasterly line of said Lot 12, a distance of 37 feet; thence North 1°01'20" East 91.86 feet to the point of beginning.

APN:  **5562-013-014**

# EXCEPTIONS

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

1.      Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2022-2023

2.      Property taxes, including any personal property taxes and any assessments collected with taxes, are as follows:

Tax Identification No.:    5562-013-014
Fiscal Year:               2021-2022
1st Installment:           $3,963.55 Paid
2nd installment:           $3,963.55 Open (Delinquent after April 10)
Penalty and Cost:          $406.35
Homeowners Exemption: $7,000.00
Code Area:                 00067

3.      An assessment by the improvement district shown below

Assessment
(or Bond) No.:             1915
Series:                    Ad #1
District:                  County of Los Angeles
For:                       Mrca-Brush Fire Clear'g Dist #1
Bond Issued:               August 6, 2003
Original Amount:           None shown

Said assessment is collected with the county/city property taxes.

4.      The herein described Land is within the boundaries of the Mello-Roos Community Facilities District(s). The annual assessments, if any, are collected with the county property taxes. Failure to pay said taxes prior to the delinquency date may result in the above assessment being removed from the county tax roll and subjected to Accelerated Judicial Bond Foreclosure. Inquiry should be made with said District for possible stripped assessments and prior delinquencies.

5.      The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 or Part 2, Chapter 3, Articles 3 and 4 respectively (commencing with Section 75) of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A; or as a result of changes in ownership or new construction occurring prior to date of policy

6.      Water rights, claims or title to water, whether or not disclosed by the public records.

7.      Covenants, conditions, or restrictions, if any, appearing in the Public Records; however, this policy insures against loss or damage arising from:

(a) the violation of those covenants, conditions, or restrictions on or prior to Date of Policy;
(b) a forfeiture or reversion of Title from a future violation of those covenants, conditions, or restrictions, including those relating to environmental protection; and
(c) provisions in those covenants, conditions, or restrictions, including those relating to environmental protection, under which the lien of the Insured Mortgage can be extinguished, subordinated, or impaired.

# EXCEPTIONS
## (Continued)

As used in paragraph 2(a), the words "covenants, conditions, or restrictions" do not refer to or include any covenant, condition, or restriction (a) relating to obligations of any type to perform maintenance, repair or remediation on the Land, or (b) pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances, except to the extent that a notice of a violation or alleged violation affecting the Land has been recorded or filed in the Public Records at Date of Policy and is not referenced in an addendum attached to this policy.

8.      Any easements or servitudes appearing in the Public Records; however, this policy insures against loss or damage arising from (a) the encroachment, at Date of Policy, of the improvements on any easement, and (b) any interference with or damage to existing improvements, including lawns, shrubbery, and trees, resulting from the use of the easements for the purposes granted or reserved.

9.      Any lease, grant, exception, or reservation of minerals or mineral rights or other subsurface substances appearing in the Public Records; however, this policy insures against loss or damage arising from (a) any effect on or impairment of the use of the Land for residential one-to-four family dwelling purposes by reason of such lease, grant, exception or reservation of minerals or mineral rights or other subsurface substances, and (b) any damage to existing improvements, including lawns, shrubbery, and trees, resulting from the future exercise of any right to use the surface of the Land for the extraction or development of the minerals or mineral rights or other subsurface substances so leased, granted, excepted, or reserved. Nothing herein shall insure against loss or damage resulting from contamination, explosion, fire, fracturing, vibration, earthquake or subsidence.

10.     Covenant and agreement wherein the owners agree to hold said Land as one parcel and not to sell any portion thereof separately. Said covenant is expressed to run with the Land and be binding upon future owners.
        Recording Date:        September 13, 1951
        Recording No.:         2491, of Official Records

11.     Matters contained in that certain document

        Entitled:              Covenant and Agreement for Community Driveway
        Recording Date:        December 22, 1992
        Recording No.:         92-2407881, of Official Records

        Reference is hereby made to said document for full particulars

12.     A deed of trust to secure an indebtedness in the amount shown below,

        Amount:                $620,000.00
        Dated:                 May 26, 2004
        Trustor/Grantor:       Alexander D. Shohet and Bernadine Fried, Husband and Wife
        Trustee:               Marin Conveyancing Corp
        Beneficiary:           Mortgage Electronic Registration Systems, Inc., solely as nominee for
                               GreenPoint Mortgage Funding, Inc, its successors and assigns
        Loan No.:              0083980961
        Recording Date:        June 2, 2004
        Recording No:          2004-1405391, of Official Records

PRELIMINARY REPORT
YOUR REFERENCE:  22-11706-AG

Ticor Title Company of California

## EXCEPTIONS
## (Continued)

Assignment of the beneficial interest under said deed of trust which names:

| | |
|---|---|
| Assignee: | U.S. Bank National Association, as Trustee for the Certificateholders of the CSFB Mortgage Securities Adjustable Rate Mortgage Trust 2004-1, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2004-1 |
| Recording Date: | January 3, 2013 |
| Recording No.: | 20130011375, of Official Records |

13.      A deed of trust to secure an indebtedness in  the amount shown below,

| | |
|---|---|
| Amount: | $100,000.00 |
| Dated: | May 24, 2004 |
| Trustor/Grantor: | Alexander D. Shohet, and Bernadine Fried, husband and wife as joint tenants |
| Trustee: | Chicago Title Insurance Company |
| Beneficiary: | Wells Fargo Bank N.A. |
| Loan No.: | Not Shown |
| Recording Date: | June 2, 2004 |
| Recording No: | 2004-1405392, of Official Records |

The Deed of Trust set forth above is purported to be a "Credit Line" Deed of Trust. Under California Civil Code Section 2943.1 it is a requirement that the Trustor/Grantor of said Deed of Trust either immediately provide the beneficiary with the "Borrower's instruction to Suspend and Close Equity Line of Credit" or provide a satisfactory subordination of this Deed of Trust to the proposed Deed of Trust to be recorded at closing.

If the above credit line is being paid off, this Company will require that Escrow obtain written confirmation from the current Beneficiary that the account has been frozen prior to recording. Failure to do so will result in this Company holding funds at the close of Escrow until such confirmation is obtained from the Beneficiary.

The effect of a full reconveyance recorded September 15, 2021 at 20211410184, of Official Records, which purports to reconvey the above-mentioned Deed of Trust.

No statement is made hereto as to the effect or validity of said reconveyance.

The requirement that this Company be furnished with confirmation from the lender that the Deed of Trust has been released prior to issuance of a policy of title insurance.

14.      A deed of trust to secure an indebtedness in  the amount shown below,

| | |
|---|---|
| Amount: | $179,000.00 |
| Dated: | January 9, 2006 |
| Trustor/Grantor: | Alexander Shohet and Bernadine Fried, Husband and Wife as Joint Tenants |
| Trustee: | National City Bank |
| Beneficiary: | National City Bank |
| Loan No.: | Not Shown |
| Recording Date: | January 20, 2006 |
| Recording No: | 2006-0140153, of Official Records |

PRELIMINARY REPORT
YOUR REFERENCE:  22-11706-AG

Ticor Title Company of California

## EXCEPTIONS
### (Continued)

The Deed of Trust set forth above is purported to be a "Credit Line" Deed of Trust. Under California Civil Code Section 2943.1 it is a requirement that the Trustor/Grantor of said Deed of Trust either immediately provide the beneficiary with the "Borrower's instruction to Suspend and Close Equity Line of Credit" or provide a satisfactory subordination of this Deed of Trust to the proposed Deed of Trust to be recorded at closing.

If the above credit line is being paid off, this Company will require that Escrow obtain written confirmation from the current Beneficiary that the account has been frozen prior to recording. Failure to do so will result in this Company holding funds at the close of Escrow until such confirmation is obtained from the Beneficiary.

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

| | |
|---|---|
| Trustee: | Nationwide Reconveyance LLC, a California Limited Liability Company |
| Recording Date: | November 3, 2015 |
| Recording No.: | 20151344367, of Official Records |

15.    An abstract of  judgment for the amount shown below and any other amounts due:

| | |
|---|---|
| Amount: | $5,897.20 |
| Debtor: | 1775 Summitridge Drive, LLC, a Limited Liability Company, dba 180 Center LA, dba 180 Center, adba Wonderland, adba 180 Treatment Center; Alex Shohet, an individual |
| Creditor | L.A. Commercial Group, Inc., a Corporation, dba Continental Commercial Group |
| Date Entered: | April 21, 2014 |
| County: | Los Angeles |
| Court: | Superior |
| Case No. | 14A00148 |
| Recording Date: | June 19, 2014 |
| Recording No: | 20140636344, of Official Records |

16.    A tax lien for the amount shown and any other amounts due, in favor of the United States of America, assessed by the District Director of Internal Revenue.

| | |
|---|---|
| Federal Serial No.: | 142609415 |
| Taxpayer: | Alexander D Shohet and Bernadine Fried |
| Amount: | $187,846.36 |
| Recording Date: | February 11, 2015 |
| Recording No.: | 20150152858, of Official Records |

17.    Said lien has been extended:

| | |
|---|---|
| Filed Date: | February 12, 2015 |
| Recording Date: | July 1, 2020 |
| Recording No.: | 20200722241, of Official Records |

PRELIMINARY REPORT
YOUR REFERENCE:  22-11706-AG

Ticor Title Company of California

## EXCEPTIONS
### (Continued)

18.    A deed of trust to secure an indebtedness in  the amount shown below,

| | |
|---|---|
| Amount: | $50,000.00 |
| Dated: | March 8, 2016 |
| Trustor/Grantor: | Alexander D. Shohet and Bernadine Fried, husband and wife as joint tenants |
| Trustee: | Chicago Title Company, a California Corporation |
| Beneficiary: | Ari Miller and Vera Domnikov, husband and wife |
| Loan No.: | not set out |
| Recording Date: | March 16, 2016 |
| Recording No: | 20160286057, of Official Records |

This Company will require that the original note, the original deed of trust and a properly executed request for full reconveyance together with appropriate documentation (i.e., copy of trust, partnership agreement or corporate resolution) be in this office prior to the close of this transaction if the above-mentioned item is to be paid through this transaction or deleted from a policy of title insurance.

Any demands submitted to us for payoff must be signed by all beneficiaries as shown on said deed of trust, and/or any assignments thereto. In the event said demand is submitted by an agent of the beneficiary(s), we will require the written approval of the demand by the beneficiary(s). Servicing agreements do not constitute approval for the purposes of this requirement.

If no amounts remain due under the obligation a zero balance demand will be required along with the reconveyance documents.

In addition, we require the written approval of said demand by the trustor(s) on said deed of trust or the current owners if applicable.

19.    A tax lien for the amount shown and any other amounts due, in favor of the United States of America, assessed by the District Director of Internal Revenue.

| | |
|---|---|
| Federal Serial No.: | 522115309 |
| Taxpayer: | Alexander D Shohet and Bernadine Fried |
| Amount: | $168,652.55 |
| Recording Date: | March 17, 2009 |
| Recording No.: | 20090379055, of Official Records |

20.    Said lien has been extended:

| | |
|---|---|
| Filed Date: | March 17, 2009 |
| Recording Date: | December 21, 2017 |
| Recording No.: | 20171486298, of Official Records |

**PLEASE REFER TO THE "INFORMATIONAL NOTES" AND "REQUIREMENTS" SECTIONS WHICH FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

---

**END OF EXCEPTIONS**

---

PRELIMINARY REPORT                                                    Ticor Title Company of California
YOUR REFERENCE:  22-11706-AG

## REQUIREMENTS SECTION

1.       In order to complete this report, the Company requires a Statement of Information to be completed by the following party(s),

        Party(s):                    All Parties

        The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

        NOTE: The Statement of Information is necessary to complete the search and examination of title under this order. Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name. Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

---

## END OF REQUIREMENTS

---

Ticor Title Company of California

# INFORMATIONAL NOTES SECTION

1.    Note: There are NO conveyances affecting said Land recorded within 24 months of the date of this report.

2.    Note: The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said Land a Single Family Residence known as 8530 Appian Way, City of Los Angeles, CA, to an Extended Coverage Loan Policy.

3.    Note: None of the items shown in this report will cause the Company to decline to attach ALTA Endorsement Form 9 to an ALTA Loan Policy, when issued.

4.    NOTE: Ticor Title Company of California will pay Chicago Title Insurance Company 12% of the title premium, as disclosed on lines 1107 and 1108 of the HUD-1.

5.    Note: The policy of title insurance will include an arbitration provision. The company of the insured may demand arbitration. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Please ask your escrow or title officer for a sample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your title insurance coverage.

6.    Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

7.    Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax. If a governmental agency is a party to the document, the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

---

## END OF INFORMATIONAL NOTES

Johna L. Cannon - OC/522

**WIRE SAFE**™ | Inquire before you wire!

# Wire Fraud Alert

This Notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened**. DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

| *Federal Bureau of Investigation:* | *Internet Crime Complaint Center:* |
|:---:|:---:|
| *http://www.fbi.gov* | *http://www.ic3.gov* |

*TM and © Fidelity National Financial, Inc. and/or an affiliate. All rights reserved*



1500 Quail Street, 3rd Floor
Newport Beach, CA 92660
Phone: (714) 289-3300

# Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment.  Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate.   As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative.  These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount.  These discounts only apply to transactions involving services rendered by the FNF Family of Companies.  This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company. The discount will only be applicable to the FNF Company as indicated by the named discount.

**FNF Underwritten Title Company**
CTC – Chicago Title company
CLTC – Commonwealth Land Title Company
FNTC – Fidelity National Title Company of California
FNTCCA - Fidelity National Title Company of California
TICOR – Ticor Title Company of California
LTC – Lawyer's Title Company
SLTC – ServiceLink Title Company

**Underwritten by FNF Underwriters**
CTIC – Chicago Title Insurance Company
CLTIC - Commonwealth Land Title Insurance Company
FNTIC – Fidelity National Title Insurance Company
FNTIC - Fidelity National Title Insurance Company
CTIC – Chicago Title Insurance Company
CLTIC – Commonwealth Land Title Insurance Company
CTIC – Chicago Title Insurance Company

## Available Discounts

**DISASTER LOANS (CTIC, CLTIC, FNTIC)**
The charge for a Lender's Policy  (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within twenty-four (24) months of the date of a declaration of a disaster  area by the government of the United States or the State of California on any land located in said  area, which was partially or totally destroyed in the disaster, will be fifty percent (50%) of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC, FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be fifty percent (50%) to seventy percent (70%) of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be forty (40%) to fifty percent (50%) of the appropriate title insurance rate, depending on the type of coverage selected.

### FIDELITY NATIONAL FINANCIAL, INC.
### PRIVACY NOTICE

Effective August 1, 2021

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

A limited number of FNF subsidiaries have their own privacy notices.  If a subsidiary has its own privacy notice, the privacy notice will be available on the subsidiary's website and this Privacy Notice does not apply.

### Collection of Personal Information
FNF may collect the following categories of Personal Information:
- contact information (*e.g.*, name, address, phone number, email address);
- demographic information (*e.g.*, date of birth, gender, marital status);
- identity information (*e.g.* Social Security Number, driver's license, passport, or other government ID number);
- financial account information (*e.g.* loan or bank account information); and
- other personal information necessary to provide products or services to you.

We may collect Personal Information about you from:
- information we receive from you or your agent;
- information about your transactions with FNF, our affiliates, or others; and
- information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

### Collection of Browsing Information
FNF automatically collects the following types of Browsing Information when you access an FNF website, online service, or application (each an "FNF Website") from your Internet browser, computer, and/or device:
- Internet Protocol (IP) address and operating system;
- browser version, language, and type;
- domain name system requests; and
- browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website.

Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above. We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites. Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

### Other Online Specifics
<u>Cookies</u>. When you visit an FNF Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. Information gathered using cookies helps us improve your user experience. For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences. You can choose whether or not to accept cookies by changing your Internet browser settings. Be aware that doing so may impair or limit some functionality of the FNF Website.

<u>Web Beacons</u>. We use web beacons to determine when and how many times a page has been viewed. This information is used to improve our websites.

<u>Do Not Track</u>. Currently our FNF Websites do not respond to "Do Not Track" features enabled through your browser.

<u>Links to Other Sites</u>.  FNF Websites may contain links to unaffiliated third-party websites. FNF is not responsible for the privacy practices or content of those websites. We recommend that you read the privacy policy of every website you visit.

### Use of Personal Information
FNF uses Personal Information for three main purposes:
- To provide products and services to you or in connection with a transaction involving you.
- To improve our products and services.
- To communicate with you about our, our affiliates', and others' products and services, jointly or independently.

### When Information Is Disclosed
We may disclose your Personal Information and Browsing Information in the following circumstances:
- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;

Copyright © 2021. Fidelity National Financial, Inc. All Rights Reserved
Order No. 00881250-997-OCT-JC2

- to nonaffiliated third party service providers with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or
- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law. We may share your Personal Information with affiliates (other companies owned by FNF) to directly market to you. Please see "Choices with Your Information" to learn how to restrict that sharing.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors. By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above described proceedings.

<u>**Security of Your Information**</u>
We maintain physical, electronic, and procedural safeguards to protect your Personal Information.

<u>**Choices With Your Information**</u>
If you do not want FNF to share your information among our affiliates to directly market to you, you may send an "opt out" request as directed at the end of this Privacy Notice. We do not share your Personal Information with nonaffiliates for their use to direct market to you without your consent.

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

<u>For California Residents</u>: We will not share your Personal Information or Browsing Information with nonaffiliated third parties, except as permitted by California law. For additional information about your California privacy rights, please visit the "California Privacy" link on our website (https://fnf.com/pages/californiaprivacy.aspx) or call (888) 413-1748.

<u>For Nevada Residents</u>: You may be placed on our internal Do Not Call List by calling (888) 714-2710 or by contacting us via the information set forth at the end of this Privacy Notice. Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: BCPINFO@ag.state.nv.us.
<u>For Oregon Residents</u>:  We will not share your Personal Information or Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

<u>For Vermont Residents</u>: We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

<u>**Information From Children**</u>
The FNF Websites are not intended or designed to attract persons under the age of eighteen (18).We do <u>not</u> collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

<u>**International Users**</u>
FNF's headquarters is located within the United States. If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

<u>**FNF Website Services for Mortgage Loans**</u>
Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice titled When Information is Disclosed, Choices with Your Information, and Accessing and Correcting Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information. FNF does not share Personal Information collected through the Service Websites, except as required or authorized by contract with the mortgage loan servicer or lender, or as required by law or in the good-faith belief that such disclosure is necessary: to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

**Your Consent To This Privacy Notice; Notice Changes**

By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice. We may change this Privacy Notice at any time. The Privacy Notice's effective date will show the last date changes were made. If you provide information to us following any change of the Privacy Notice, that signifies your assent to and acceptance of the changes to the Privacy Notice.

**Accessing and Correcting Information; Contact Us**

If you have questions, would like to correct your Personal Information, or want to opt-out of information sharing for affiliate marketing, visit FNF's Opt Out Page or contact us by phone at (888) 714-2710 or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue,
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

## ATTACHMENT ONE (Revised 05-06-16)

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE POLICY – 1990

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:
    (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
    (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
    (c)  resulting in no loss or damage to the insured claimant;
    (d)  attaching or created subsequent to Date of Policy; or
    (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material not shown by the public records.

### CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE

### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
    a.  building;
    b.  zoning;
    c.  land use;
    d.  improvements on the Land;
    e.  land division; and
    f.  environmental protection.
    This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2.  The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3.  The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.

4.  Risks:
    a.  that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
    b.  that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

c.  that result in no loss to You; or
d.  that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.  Failure to pay value for Your Title.
6.  Lack of a right:
a.  to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
b.  in streets, alleys, or waterways that touch the Land.
This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.  The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
•  For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 5,000.00 |

## 2006 ALTA LOAN POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
(i)   the occupancy, use, or enjoyment of the Land;
(ii)  the character, dimensions, or location of any improvement erected on the Land;
(iii) the subdivision of land; or
(iv) environmental protection;
or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
(b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
(a)  created, suffered, assumed, or agreed to by the Insured Claimant;
(b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
(c)  resulting in no loss or damage to the Insured Claimant;
(d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or
(e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
(a)  a fraudulent conveyance or fraudulent transfer, or
(b)  a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records.  This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).
The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

{Except as provided in Schedule B - Part II,{ t{or T}his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

**{PART I**

{The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency  that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown  by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the Public Records.}

**PART II**

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:}

## 2006 ALTA OWNER'S POLICY (06-17-06)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv)  environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)  resulting in no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a)  a fraudulent conveyance or fraudulent transfer; or
    (b)  a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses,  that arise by reason of:

{The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency  that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the Public Records. }
7.  {Variable exceptions such as taxes, easements, CC&R's, etc. shown here.}

© **California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY – ASSESSMENTS PRIORITY (04-02-15)**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i)   the occupancy, use, or enjoyment of the Land;
   (ii)  the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv)  environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.
9. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.
10. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any  other substances.

---

Attachment One – CA (Rev. 05-06-16)                                                                                                          Page 4

**© California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.



This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acerage or other matters shown thereon

## Ticor Title Company of California Statement Of Information

**CONFIDENTIAL - TO BE USED ONLY IN CONNECTION WITH Transaction Number:  00881250-997-JC2**

**NOTE:  This form is very important.**  It is needed to verify your identity and to eliminate judgments and liens against people with similar names.

**THE STREET ADDRESS of the property in this transaction is:**     (If none, please leave blank)

ADDRESS: _____     CITY and STATE: _____

| | | | |
|---|---|---|---|
| **1.** Improvements: | ☐ Single Residence | ☐ Multiple Residence | ☐ Commercial | ☐ Vacant Land |
| **2.** Occupied By: | ☐ Owner | ☐ Tenants | **3.** ANY CONSTRUCTION WITHIN THE LAST 6 MONTHS? ☐ YES ☐ NO |

**4.** IF YES to No. **3**, STATE NATURE WORK DONE: _____

| PARTY 1 | PARTY 2 |
|---|---|
| | |
| First       Middle       Last | First       Middle       Last |
| Former Last Name(s), if any | Former Last Name(s), if any |
| | |
| Birthplace       Birth Date | Birthplace       Birth Date |
| Social Security Number       Driver's License No. | Social Security Number       Driver's License No. |
| I ☐ am single ☐ am married ☐ have a **registered** domestic partner | I ☐ am single ☐ am married ☐ have a **registered** domestic partner |
| Current Spouse or Registered Domestic Partner (Other Than Party 2):  Name: | Current Spouse or Registered Domestic Partner (Other Than Party 1):  Name: |
| Former spouse/domestic partner (if none – check this box ☐) | Former spouse/domestic partner (if none – check this box ☐ ) |
| ☐ Deceased       Date:_____ Where:_____ | ☐ Deceased       Date:_____ Where:_____ |
| ☐ Divorce/Dissolution   Date:____ Where:____ | ☐ Divorce/Dissolution   Date:____ Where:____ |
| Children from current and/or former marriages and/or domestic partnerships | Children from current and/or former marriages and/or domestic partnerships |
| Child Name: _____ DOB _____ | Child Name: _____ DOB _____ |
| Child Name: _____ DOB _____ | Child Name: _____ DOB _____ |

**Marriage or Domestic Partnership Between Parties 1 and 2**

Are Parties 1 and 2:   ☐ Married?   Date: _____       ☐ Registered Domestic Partners?   Date: _____

**Party 1 - Occupations For Last 10 Years (*attach an additional page, if necessary*)**

| Present Occupation | Firm Name | Address | From | To |
|---|---|---|---|---|
| Prior Occupation | Firm Name | Address | From | To |

**Party 1 - Residences For Last 10 Years (*attach an additional page, if necessary*)**

| Number And Street | City, State, Zip Code | From | To |
|---|---|---|---|
| Number And Street | City, State, Zip Code | From | To |

**Party 2 - Occupations For Last 10 Years (*attach an additional page, if necessary*)**

| Present Occupation | Firm Name | Address | From | To |
|---|---|---|---|---|
| Prior Occupation | Firm Name | Address | From | To |

**Party 2 - Residences For Last 10 Years (*attach an additional page, if necessary*)**

| Number And Street | City, State, Zip Code | From | To |
|---|---|---|---|
| Number And Street | City, State, Zip Code | From | To |

**Have any of the above parties owned or operated a business?**   ☐ No ☐ Yes     If yes, please list name(s):

**I have never been** adjudged, bankrupt nor are there any unsatisfied judgments or other matters pending against me which might affect my title to this property except as follows:

**The undersigned declare under penalty of perjury that the above information is true and correct (all parties must sign)**

**Phone(s) #** _____     **Phone(s) #** _____

**E-Mail:** _____     **E-Mail:** _____

| Party 1 Signature | Date | Party 2 Signature | Date |
|---|---|---|---|

 **TICOR TITLE**™

1500 Quail Street, 3rd Floor
Newport Beach, CA 92660
Phone:  (714) 289-3300

## CREDIT LINE / EQUITY LINE OF CREDIT CLOSURE REQUEST

Date:  _____

To:  _____

_____

_____

_____

**Attention:**  Payoff Dept.
**Reference:**  Account/Loan # _____
**Property Address:**    8530 Appian Way, Los Angeles, CA 90046

To Whom It May Concern:

Please accept this letter as a request to close/freeze the above-referenced credit line or equity line of credit as of this date.

I/We agree not to request any advances on this account on or after the date of this letter.

You will be receiving payment in full from the proceeds of our escrow transaction. Upon receipt of payoff, please send your Reconveyance or Release of Lien to:

**Ticor Title Company of California**
1500 Quail Street, 3rd Floor
Newport Beach, CA 92660
Attn:  Johna L. Cannon - OC
Ref:  00881250-997-JC2

Sincerely,

_____    _____

_____    _____

_____    _____

(All borrowers must sign)

REQ00001 (Rev. 12/5/2012)

# EXHIBIT B

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.



**This page is part of your document - DO NOT DISCARD**





# 20090991832

**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**07/01/09 AT 10:45AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**

200907010060058

00000795614

002183860

**SEQ:**
**01**

DAR - Mail (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

E460071

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

RECORDING REQUESTED BY

NAME: Tristan F. Mackprang, Esq.

**WHEN RECORDED MAIL TO:**

NAME: Zuber & Taillieu, LLP

ADDRESS: 10866 Wilshire Boulevard, Suite 300

CITY / STATE / ZIP: Los Angeles, CA 90024

07/01/2009

*20090991832*

(DOCUMENT WILL ONLY BE RETURNED TO NAME & ADDRESS IDENTIFIED ABOVE)

(SPACE ABOVE FOR RECORDER'S USE)

Receiver's Certificate of Indebtedness No. 1

**(DOCUMENT TITLE)**

SEPARATE PAGE, PURSUANT TO CA. GOV'T. CODE 27361.6

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

1  David J. Pasternak, Bar No. 72201
   Receiver
2  1875 Century Park East, Suite 2200
   Los Angeles, California 90067-2523
3  Telephone:  310.553.1500
   Facsimile:  310.553.1540
4  E-Mail:  djp@paslaw.com

5

6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9              **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

10

| | |
|---|---|
| 11  ALEXANDER SHOHET; BERNADINE FRIED, | **CASE NO. BC 401 271** |
| 12           Plaintiffs, | **Hon. James C. Chalfant** |
| 13      vs. | **RECEIVER'S CERTIFICATE OF INDEBTEDNESS NO. 1** |
| 14  WONDERLAND TREATMENT CENTERS | |
| 15  LLC; SCS HOLDINGS, etc., | **Dept. 85** |
| 16           Defendants. | |
| 17  DR. HOWARD C. SAMUELS; ANDREW SPANSWICK, | |
| 18           Real Parties in | |
| 19           Interest, | |

20

21

22     1.    For good and valuable consideration, receipt of which

23  is hereby acknowledged, David J. Pasternak, the Court appointed

    Receiver in the above-entitled matter, solely in his capacity as

24  Receiver herein, hereby issues this Receiver's Certificate Of

25  Indebtedness No. 1 in the sum of One Hundred Twenty-Five Thousand

26  Dollars ($125,000.00) to Dr. Howard C. Samuels, in exchange for

27  an advance of funds from Dr. Howard C. Samuels of the like sum.

28

PASTERNAK,
PASTERNAK
& PATTON

W:\75130\0001\Pleadings\Receiver's          1
Certificate No. 1.doc

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

2.    This Certificate is issued under the authority of the Los Angeles Superior Court and Paragraph j of Attachment 27 to the May 19, 2009 Order Appointing Receiver After Hearing issued by Los Angeles Superior Court Judge James C. Chalfant appointing David J. Pasternak as Receiver in this action ("the May 19, 2009 Order").

3.    Pursuant to Paragraph j of Attachment 27 to the May 19, 2009 Order, this Certificate is a lien of first priority on all property in the Receivership Estate, which lien shall rank no less than pari passu with any other lien granted by the Receiver through the issuance of Receiver's Certificates, and superior to the interests of any secured creditors given notice of the issuance of this Certificate.

4.    Pursuant to Paragraph Paragraph j of Attachment 27 to the May 19, 2009 Order, this Certificate bears interest at the rate of eight percent (8%) per annum.

DATED:    June 16, 2009

_____
David J. Pasternak
Receiver

W:\75130\0001\Pleadings\Receiver's
Certificate No. 1.doc                2

RECEIVER'S CERTIFICATE OF INDEBTEDNESS NO. 1

# EXHIBIT C



**COLEMAN FROST LLP**
201 Nevada, Smoky Hollow
El Segundo, CA 90245

June 9, 2022

**SENT VIA HAND DELIVERY AND EMAIL (diana.wyatt@stewart.com)**

To:    Diana Wyatt
Escrow Officer
Stewart Title of California
5740 Ralston Street, Unit 301
Ventura, CA 93003

PAYOFF DEMAND STATEMENT

Your Reference:    1673670
Case No.:    BC401271
Property Address:    8530 Appian Way, Los Angeles, CA 90046

IN ACCORDANCE with your demand on May 26, 2022 given pursuant to Civ. Code, § 2943, the undersigned submits the following Payoff Demand Statement concerning the obligation described as follows: RECEIVER'S CERTIFICATE OF INDEBTEDNESS NO. 1 recorded as Instrument No. 20090991832 in the Official Records of the Recorder's Office of Los Angeles County, California.

1.  The amounts required as of June 9, 2022 to fully satisfy all obligations secured by the Receiver's Certificate are: $254,876.10, which includes the initial principal of $125,000.00 plus simple interest at a rate of 8% per annum from June 16, 2009 to June 8, 2022.

2.  The information to calculate the payoff amount on a per diem basis for the time period from June 8, 2022 to present, is: (0.08 x $125, 000)/365.

Dated: June 9, 2022

Tristan F. Mackprang, attorney for beneficiary
Howard C. Samuels, Ph.D.

**Tel (424) 277-1650 • Fax (310) 648-8739 • www.colemanfrost.com**

# EXHIBIT D

# BERELIANI LAW FIRM, PC

12100 WILSHIRE BLVD, SUITE 800
LOS ANGELES, CA 90025
Tele: 310-882-6258 * Fax: 888-876-0896
E-mail: sanaz@berelianilaw.com

Sanaz Sarah Bereliani, Esq                                          Debt Relief Agency

August 23, 2022

Via Email
Tristan Mackprang
Coleman Frost, LLP
201 Nevada Street
El Segundo, CA 90245-4211
Tele: 424-277-1650
Email: tristan@colemanfrost.com

Re: Refinance of 8530 Appian Way, Los Angeles, CA 90046

Dear Mr. Mackprang:

My firm is bankruptcy counsel to Alex Shohet and Bernadette Fried (together, "Shohet") and is advising them with certain issues related to the refinance of their house located at 8530 Appian Way, Los Angeles, CA 90046 (the "Property").

We are writing in response to your letter dated June 9, 2022 to Diana Wyatt at Stewart Title of California in which you demand, on behalf of Howard Samuels, payment in the amount of $254,876.10 to satisfy the document you recorded against the Property (Instrument No. 20090991832 (the "Instrument"). We have several problems with your demand:

First, the Instrument was wrongfully recorded against the Property because it is not a judgment against Shohet. The Instrument is a Receiver's Certificate of Indebtedness that states that Howard Samuels loaned $125,000 to David Pasternak. Nothing in the document states that Shohet owes money to anyone. Accordingly, there was no legal basis to record the Instrument against the Property.

Second, the Instrument states that the Receiver's Certificate "is a lien of first priority on all property of the Receivership Estate." The Receivership Estate consisted of the assets of Wonderland Treatment Centers, LLC and SCS Holdings. The Property — which is Shohet's personal residence — was never part of the Receivership Estate. Because the

1

Instrument does not authorize any lien against any of Shohet's personal property, including the Property, it was wrongfully recorded.

Third, under California law, a creditor is permitted to record the following types of liens against another person's property: an abstract of judgment against the property owner, a certified copy of a judgment against the property owner, or a consensual lien granted by the property owner. The Instrument is none of those things. We are not aware of any statute or regulation that authorized Samuels to record the Instrument.

Fourth, we are not aware of any other basis for Samuels to assert a secured claim against Shohet or lien on the Property.

Fifth, on October 30, 2016, Shohet filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Los Angeles Division [Case No. 2:16-bk-24333-BR]. In the bankruptcy case, Samuels was listed as a creditor with a general unsecured claim in the amount of $10,158.43. Samuels was not listed as a secured creditor. Samuels was served with notice of the bankruptcy case and all other required notices. Samuels never filed a proof of claim, objected to any of the proceedings, or asserted that he was a secured creditor.  On June 27, 2018, the Bankruptcy Court entered an order confirming Shohet's chapter 11 plan of reorganization. Under the Plan, Samuels is treated as a general unsecured creditor. As part of the Plan confirmation order, the Bankruptcy Court entered a discharge injunction barring creditors from asserting any claims beyond the treatment to which they are entitled under the Plan.

Sixth, if Samuels contends that the Instrument is based on a judgment against Shohet (of which we are not aware), such judgment is no longer valid. Under California law, judgments expire after 10 years unless the judgment creditor renews the judgment on application to the court before the 10-year period expires. The Instrument was recorded more than 13 years ago. For this reason too, it is void.

For all of the above reasons, Samuels had no legal right to record the Instrument and has no legal right to assert any interest in the Property or demand payment from Shohet. Your recording of the Instrument was impermissible and tortious. Your demand letter is baseless and in violation of the Bankruptcy Court's discharge injunction.

We demand that you take all necessary action to extinguish or withdraw the Instrument and provide the title company with confirmation that Samuels is not owed any money on account of the Instrument no later than August 26, 2022 at 5:00 p.m. Pacific Time and provide us with confirmation that you have done so.

We reserve the right to take all appropriate legal action and pursue all available remedies including, without limitation, seeking declaratory relief that Samuels does not have a valid security interest in the Property, seeking damages and fees for slander of title and related causes of action, and seeking an Order to Show Cause re Contempt from the Bankruptcy Court for violation of the Court's discharge injunction.

2

If you believe that any of the above statements of fact or law are incorrect, please notify me immediately. All rights reserved.

Sincerely,

Saraz Sarah Bereliani, Esq

cc: Diana Wyatt

3

# EXHIBIT E



**COLEMAN FROST LLP**
201 Nevada, Smoky Hollow
El Segundo, CA 90245

August 26, 2022

**_SENT VIA EMAIL (sanaz@berelianilaw.com)_**

Senaz Bereliani
Bereliani Law Firm, PC
12100 Wilshire Boulevard, Suite 800
Los Angeles, CA 90025

      ***Re:***    ***Howard Samuels Lien Against 8530 Appian Way, Los Angeles***

Dear Ms. Bereliani:

This letter responds to yours dated August 23, 2022 in which you, on behalf of Alex Shohet and Bernadine Fried (together, the "Shohets"), assert without citation to a single legal authority that the lien on the Shohets' property at 8530 Appian Way, Los Angeles, California 90046 (the "Property") is "wrongfully recorded" and demand its extinguishment. As evidenced by the lack of legal authority cited therein, your assertions appear unsupported by law or fact. I will address the points in the order in which you make them in your August 23, 2022 letter.

First, you claim that the Instrument No. 20090991832 (the "Instrument" or "Lien") was "wrongfully recorded . . . because it is not a judgment against Shohet." While that may or may not be true, it is beside the point. A lien is any charge imposed, other than by a transfer in trust, upon a specific property by which it is made security for the performance of an act. Cal. Civ. Code § 2872. "In its broadest sense and common acceptation, it is understood and used to denote a legal claim or charge on property, either real or personal, as security for the payment for some debt or obligation ... it includes every case in which personal or real property is charged with the payment of a debt." *Gray v. Horne* (1941) 48 Cal.App.2d 372, 375. A lien need not be created by a "judgment". Indeed. "There are many kinds of liens, among them being mechanic's liens. mortgage liens. liens arising in the course of judicial proceedings, maritime and tax and assessment liens." *Id.* A lien can be created by operation of law. Even an equitable interest in real property may be subject to an equitable charge. 42A Cal. Jur. 3d Liens § 8.

In this case, the lien was created when the court-appointed receiver in Los Angeles Superior Court Case No. BC401271 sought operating capital for the receivership operations from both Dr. Samuels and the Shohets. The Shohets apparently lacked the money or refused to pay for their share of those receivership operations and therefore the Receiver, acting on behalf of the Court. imposed a lien on the Property to secure the Shohets' performance of their obligations to the

Re: Howard Samuels Lien Against 8530 Appian Way, Los Angeles
August 26. 2022
Page 2

receiver in the case. You should also note that the operating proceeds given by Dr. Samuels paid
to continue the operation of the Wonderland Treatment Centers, which was jointly owned by Dr.
Samuels and the Shohets, and thus an equitable lien would have arisen independently of the
receiverships.

Thus, there is no merit to your statement that because there was no judgment there could be no
lien, because a judgment is not necessary to the creation of a lien.

Second, your statement that the Shohet residence was not party of the receivership is beside the
point. The Court had personal jurisdiction over the Shohets along with the authority to impose
whatever means were necessary to effectuate its receivership, including imposing a lien on the
Shohets' personal residence to reimburse Dr. Samuels for his contributions to the receivership in
excess of his fair share.

Third, your statement that "you are not aware of any statute or regulation that authorized
Samuels to record the Instrument", while undoubtedly true, does not mean that the lien could not
be recorded. Indeed, had you bothered to look at the portions of the California Government Code
authorizing the recording of instruments, you would have discovered that Gov't Code § 27201
authorized the filing of instruments on order of the court: "The recorder shall, upon payment of
proper fees and taxes, accept for recordation any instrument, paper, or notice that is authorized or
required by statute, *or court order to be recorded . . ..*" Gov. Code, § 27201(a)(1)(A). In this
case, the receiver was acting on behalf of the Court in filing the document and had full authority
to do so on behalf of the Court.

Fourth, you state that you "are not aware of any other basis for Samuels to assert a secured claim
against Shohet or lien on the Property." I am not certain what this point is intended to mean that
is any different than your first three points. However, the basis for the lien was Dr. Samuel's
funding of the court-ordered receivership operations for the common benefit of both Dr. Samuels
and the Shohets.

Fifth, you point to the chapter 11 petition filed by Shohet on October 16, 2016 and assert.
without legal authority, that Dr. Samuels is now barred from asserting his recorded, perfected
lien against the Property. Initially, I note that your letter admits that Dr. Samuel's secured claim
was never listed in the bankruptcy schedules, and, thus, was not dealt with under the chapter 11
plan. Furthermore, contrary to the claims in your letter, the holder of a secured claim need not
file a proof of claim in order to preserve its lien. Fed. R. Bankr. P. 3002(a) ("A lien that secures a
claim against the debtor is not void due only to the failure of any entity to file a proof of claim").
Secured creditors' liens "ride through" bankruptcy unaffected unless affirmative action is taken
to avoid the lien. 11 USC § 506(d)(2); *Newman v. First Security Bank of Bozeman*, 887 F2d 973,
976 (9th Cir. 1989); *In re Cortez*, 191 BR 174, 177-179 (9th Cir. BAP 1995) (even unperfected
lien "rides through" bankruptcy); *Matter of Tarnow*, 749 F2d 464, 465 (7th Cir. 1984).

Re: Howard Samuels Lien Against 8530 Appian Way, Los Angeles
August 26, 2022
Page 3

Furthermore, as a general rule, bankruptcy discharge does not eliminate liens. A bankruptcy discharge extinguishes only the debtor's *in personam* liability on the claim but does not affect the right to bring an action against the debtor "in rem." Johnson v. Home State Bank, 501 US 78, 84, 111 S.Ct. 2150, 2154 (1991); *Dewsnup v. Timm*, 502 US 410, 418, 112 S.Ct. 773, 778 (1992); *In re Isom*, 901 F2d 744, 745 (9th Cir. 1990).

Sixth, and finally, Dr. Samuels does not "contend that the Instrument is based on a judgment", as you suggest in your letter. Rather, the instrument is based on Dr. Samuels's contribution to the funds needed by the Receiver to continue operating the Wonderland Treatment Centers during the pendency of the case that the Shohets brought. The Lien was perfected in 2009 and the underlying obligations has never been satisfied or extinguished. It remains a valid lien on the Property.

If you wish to send us letter providing actual legal support instead of unfounded and unsupported assertions, Dr. Samuels will be happy to consider them. However, your letter has provided no basis for Dr. Samuels taking any action, other than to continue to enforce his Lien on the Property.

Regards,

COLEMAN FROST LLP

Tristan F. Mackprang